IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2021

**PRENTIS S. LEE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-02464     Jennifer Johnson Mitchell, Judge**

_____

**No. W2020-00818-CCA-R3-PC**
_____

The Petitioner, Prentis S. Lee, filed a petition for post-conviction relief challenging his conviction for two counts of rape resulting in a ten-year sentence.  The post-conviction court denied relief, and the Petitioner appeals.  On appeal, the Petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to properly explain the elements of two additional counts of rape in a superseding indictment.  After our review, we affirm the judgment of the post-conviction court denying the Petitioner relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., and J. ROSS DYER, J., joined.

Monica A. Timmerman, Memphis, Tennessee, for the appellant, Prentis S. Lee.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**TRIAL**

Following a jury trial, the Petitioner was convicted of rape without consent and rape while the victim was mentally incapacitated or physically helpless. See Tenn. Code Ann. § 39-13-503(a)(1)-(3).  The two convictions were merged, and the Petitioner was sentenced to ten years.  See State v. Prentis Lee, No. W2015-01538-CCA-R3-CD, 2016 WL 6915582 (Tenn. Crim. App. Nov. 23, 2016).

At the trial, the victim testified that she was twenty-six years old and had been dating Larry McGowan continuously since the age of seventeen. Lee, 2016 WL 6915582, at *1. In April 2010, the victim and Mr. McGowan were staying at the Petitioner's home for a few days. Mr. McGowan and the Petitioner were cousins. On April 10, 2010, the victim and Mr. McGowan attended two parties alongside the Petitioner. The Petitioner's brother, Nicholas Lee, and the victim's sister also attended the parties. The victim testified that she did not drink alcohol often and that she became intoxicated at the first party after drinking two beers. The victim became sick at the second party and began to throw up. The group decided to leave and return to the Petitioner's home.

When the group arrived at the Petitioner's home, the victim called her stepfather to let him know that no one was able to drive her sister home because everyone was intoxicated. Lee, 2016 WL 6915582, at *2. At the home, the victim continued to feel intoxicated and nauseated. Id. at *1. Mr. McGowan helped the victim shower and he made a pallet on the living room floor so the victim could sleep. The victim laid down on the pallet. She wore a shirt and a towel around her waist, and she was covered with a sheet. Before she fell asleep, the victim's sister was sitting on the couch and the Petitioner and Mr. McGowan were playing chess. The victim was asleep when the Petitioner drove her sister home.

The victim described herself as a heavy sleeper. Lee, 2016 WL 6915582, at *1. She testified that at some point, she awoke to a man having sexual intercourse with her. The room was dark, and she could not see the man's face. The victim screamed Mr. McGowan's name, but the man did not respond. The victim touched the man's navel and described it as "bushy." The victim then touched the man's face and felt thick facial hair. The attack continued for two or three minutes after she awoke. The victim asserted that she was in shock and unable to respond. The man then got up and ran toward the bedrooms. The victim stated that Mr. McGowan did not have "bushy" navel hair and neither Mr. McGowan or the Petitioner's brother had thick facial hair. The victim asserted that the room was too dark to allow her to see her attacker's face. She believed her attacker was wearing a condom.

The victim testified that after the attack, she cried and walked through the house to see who was awake. Lee, 2016 WL 6915582, at *1. She found the Petitioner's brother asleep and snoring loudly in one of the bedrooms. The victim could not find Mr. McGowan. The victim knocked on the Petitioner's bedroom door and entered. The Petitioner's clothes were on the floor, and he was naked in his bed. The victim told the Petitioner, "You did something to me." The Petitioner denied that he had committed the act. The victim explained that she knew the Petitioner was the man who raped her because he was the only person in the house who was awake. The victim returned to the living room and continued crying.

-2-

The victim asserted that she cried for five to ten minutes when she heard a knock on the door.  Lee, 2016 WL 6915582, at *2.  The door was locked, and the lights were off.  The victim did not recall locking the door or turning off the lights.  The victim opened the door, and Tasha Banks and Mr. McGowan entered the home.  Mr. McGowan asked the victim what was wrong to which she responded, "Your cousin just raped me."  Mr. McGowan spoke to the Petitioner and told him that the victim had stated that he "did something to her."  The victim testified that the Petitioner became "aggressive" and denied the claims.  The victim called the police, and the Petitioner asked the victim and Mr. McGowan to leave.

After the police arrived, the victim was transported to the Memphis Sexual Assault Resource Center for an examination.  Lee, 2016 WL 6915582, at *2.  The victim stated that the nurse took a vaginal swab and commented that the swab smelled like a condom.  The victim was then taken to the police station to give a statement.

The victim stated that she did not have a sexual relationship with the Petitioner and that she did not consent to sexual intercourse with him on that night.  Lee, 2016 WL 6915582, at *2.  She said that prior to waking up, she was unaware that anyone had entered or left the house.  She denied initiating sexual contact with the Petitioner as an act of revenge against Mr. McGowan's infidelities.  The victim denied telling anyone that she was unsure if the Petitioner had raped her or that someone else had possibly raped her.

As a result of the attack, the victim testified that her attitude and personality had changed.  Lee, 2016 WL 6915582, at *2.  She stated that she did not trust anyone, could not sleep in another person's home, and did not socialize often.  She could not spend time with Mr. McGowan's family, because they were related to the Petitioner.

On cross-examination, the victim stated that the group had shared two or three "blunts" of marijuana on the night of the incident.  Lee, 2016 WL 6915582, at *2.  She said the group returned to the Petitioner's home around 2:00 or 3:00 a.m.  She did not recall what time she called the police.  She testified that she was not so intoxicated that she was unable to recall what had occurred.

The victim acknowledged that she received $2,000 from the State victim compensation fund in June 2011.  She denied that she was aware of the fund before April 2010, and she never discussed the compensation.

The victim denied that she and Mr. McGowan had ever broken up during the course of their relationship.  Lee, 2016 WL 6915582, at *2.  She also denied that she had ever suspected him of being unfaithful.  The victim denied that she was jealous that Ms. Banks

-3-

and Mr. McGowan left the house together that night, that she propositioned the Petitioner as a result, that the two had consensual sex, and that she lied about being raped. The victim testified that she was arrested for various domestic violence charged while the Petitioner's rape charges were pending and that all of her charges were dismissed. Id. at *3.

Tasha Banks testified that in April 2010, she had been dating the Petitioner for approximately four months. Lee, 2016 WL 6915582, at *3. On April 11, 2010, the Petitioner called her sometime after midnight and asked if she had a condom. Ms. Banks said she would bring a bag of condoms with her to the Petitioner's house. The Petitioner and Mr. McGowan picked Ms. Banks up from her house and brought her back to the Petitioner's home. Upon arriving, she saw the victim sleeping on the floor. The Petitioner asked Ms. Banks to go to a convenience store and buy some juice and to take Mr. McGowan. When the two left the home, the victim was still asleep on the floor, and Ms. Banks did not lock the door or turn off the lights.

Upon returning, Ms. Banks recalled that the lights were off and that the front door was locked. Lee, 2016 WL 6915582, at *3. After knocking on the door for "a good three minutes," the victim answered the door, and Ms. Banks could tell something was wrong. Ms. Banks went to the Petitioner's bedroom and found him naked. Id. at *3. Mr. McGowan came to the bedroom and asked to speak with the Petitioner.

Ms. Banks discovered that her bag was missing a condom. Lee, 2016 WL 6915582, at *4. She stated that the Petitioner had a beard and hair on his chest and stomach. She testified that the victim did not appear to be intoxicated when she saw her, but the Petitioner and Mr. McGowan appeared to be under the influence of alcohol.

Mr. McGowan testified that at the time of trial, he and the victim had been in a relationship for ten or eleven years. Lee, 2016 WL 6915582, at *4. Mr. McGowan denied that anyone in the group smoked marijuana on April 10, 2010. He recalled that the victim vomited and was unable to stay awake. Mr. McGowan and Ms. Banks drove to a convenience store and were gone for approximately ten minutes. Id. at *5. Upon leaving, the kitchen light was on, and he left the door unlocked because he did not have a key. When the two returned to the home, the door was locked, the lights were off, and the victim answered the door. The victim was crying and said that when she woke up, a man was "in" her.

After seeing the victim, Mr. McGowan confronted the Petitioner in his bedroom. Lee, 2016 WL 6915582, at *5. The Petitioner denied the victim's claim of rape. Mr. McGowan and the Petitioner argued for approximately ten minutes. At the time of the incident, Mr. McGowan did not have a beard or hair on his navel.

-4-

On cross-examination, Mr. McGowan testified that he and the victim had been "on and off" for five years and that they had broken up a few times. Lee, 2016 WL 6915582, at *5. He stated that it was necessary for both he and Ms. Banks to go to the convenience store because he did not have a driver's license, but had planned to make the purchase of juice and cigars. Upon returning to the home, the victim answered the door and told Mr. McGowan that she woke up to the Petitioner having sex with her. She stated that she felt a mustache and after realizing it was not Mr. McGowan, she "kind of woke up" and saw the Petitioner run to the back of the house.

Tammy Keough, a nurse practitioner with the Memphis Sexual Assault Resource Center, testified as an expert in forensic nursing. Lee, 2016 WL 6915582, at *6. She examined the victim on April 11, 2010 and described the victim as cooperative, tense, and crying. The victim reported that she thought the perpetrator may have worn a condom when he vaginally penetrated her and that she had been kissed inside of her mouth. Ms. Keough took swabs of the victim's mouth and vaginal area. She also took a penile swab from the Petitioner. She said that the victim did not have any traumatic injuries and that she did not routinely smell for condom use.

Officers Lee Walker and Andrew Podesta of the Memphis Police Department responded to a call on April 11, 2010. Lee, 2016 WL 6915582, at *7. Upon arriving, the victim was crying and was "adamant" that something had happened to her. Officer Walker testified that the Petitioner was the only man in the house with facial hair. The two officers searched the residence and found an open condom wrapper on the headboard in one of the bedrooms. Officer Walker testified that the victim did not tell him that the Petitioner raped her, but she did say the perpetrator had hair on his face and chest.

Lieutenant Celia Tisby of the Memphis Police Department testified that she was the lead investigator in the case. Lee, 2016 WL 6915582, at *7. She went to the scene and spoke to the victim, describing the victim's demeanor as upset and similar to rape victims in other cases she had investigated. Lieutenant Tisby and Major Chorcie Jones interviewed the Petitioner at the police department. Lee, 2016 WL 6915582, at *7. Lieutenant Tisby testified that the Petitioner signed a waiver of rights form prior to the interview and had agreed to speak to the officers. The waiver of rights form, however, was missing from the file, and Lieutenant Tisby was not sure if the file was misplaced during the investigation or after the file was given to the prosecutors. The Petitioner was given an opportunity to review his statement and sign, but he chose not to sign after learning he was being charged.

The Petitioner told the officers that he, Mr. Lee, Mr. McGowan, the victim, and the victim's sister attended a party on the night of the incident. Lee, 2016 WL 6915582, at *8. He stated that the victim had consumed beer and vodka at the party and that she had vomited. The group returned to his home around 2:00 or 3:00 a.m. The Petitioner claimed

-5-

that he asked Mr. McGowan and Ms. Banks to go to a store because Mr. McGowan was "trying to mess" with Ms. Banks and that he and Mr. McGowan occasionally "shared" women.

The Petitioner told the officers that after Mr. McGowan and Ms. Banks left, the victim woke up and said "[Y]'all think y'all slick, who is that girl?" Lee, 2016 WL 6915582, at *8. After explaining who the woman was, the Petitioner claimed that the victim asked him, "[D]o you want some of this?" The victim removed her sheet, and she was naked. The Petitioner stated that he retrieved a condom from Ms. Banks' bag and the two had sexual intercourse. The Petitioner asserted that when the victim said Mr. McGowan's name, he believed Mr. McGowan was returning, so the Petitioner went back into his bedroom. After Mr. McGowan and Ms. Banks returned two or three minutes later, Mr. McGowan confronted the Petitioner and asked what happened between him and the victim. The Petitioner denied that anything happened, and the victim began crying. The Petitioner asked everyone to leave.

Nicholas Lee, the Petitioner's brother, testified that after returning to his home on the night of the incident, the victim did not seem intoxicated and was "talking normal." Lee, 2016 WL 6915582, at *9. He did not recall hearing the victim scream at any point. Mr. Lee and the Petitioner were handcuffed and transported to the police station as suspects in the victim's rape. He stated that three or four days prior to the incident, he heard the victim state that a friend received $10,000 from the victim's compensation fund after she claimed that she was raped. Mr. Lee also spent time with Mr. McGowan and the victim after the incident, and he testified that the victim did not act upset or scared. Mr. Lee did not inform officers of the victim's statement about her friend's receiving victim compensation money.

## DIRECT APPEAL

Following the Petitioner's convictions, he appealed. On direct appeal, the Petitioner argued that: (1) the trial court erred in denying his motion to suppress his statement to police officers; (2) the failure to preserve a record of the preliminary hearing mandated dismissal of the charges or a new preliminary hearing; (3) the evidence was insufficient to support the convictions; (4) the trial court erred in limiting defense counsel's cross-examination of various witnesses; (5) the trial court erred in admitting victim impact evidence; (6) the trial court erred in allowing the State to present rebuttal witnesses who remained in the courtroom during the trial; (7) the trial court erred in failing to instruct the jury on assault as a lesser-included offense of rape; (8) the Petitioner's sentence was excessive; and (9) the cumulative effect of the errors required a new trial. Lee, 2016 WL 6915582, at *11.

-6-

This court concluded that the trial court did not credit the Petitioner's testimony at the motion to suppress hearing, but instead found that the Petitioner had waived his rights, that he agreed to make a statement after officers informed him of his rights, and that the statement was voluntarily given. Lee, 2016 WL 6915582, at *14-15. This court also concluded that the Petitioner did not renew his initial motion for a new preliminary hearing after the filing of the superseding indictment; rather, defense counsel stated that the Petitioner "waived any time constraints, agreed to proceed under the new indictment, and was prepared to proceed with trial[.]" Accordingly, the Petitioner was not entitled to relief with regard to the preliminary hearing issue. Id. at *17. This court also concluded that the evidence was sufficient. Lee, 2016 WL 6915582, at *18.

This court found that the trial court did not abuse its discretion in excluding evidence. Lee, 2016 WL 6915582, at *20. This court found that the victim's testimony about the effects of rape on her relationship with the Petitioner's family was relevant. Id. This court concluded that any error allowing rebuttal witnesses would have been harmless. Id. at *24. Additionally, this court concluded that no error existed by not charging lesser assault offenses. Id. at *25. This court concluded that the trial court considered the purposes and principles of the Sentencing Act, that the Petitioner's sentence was within the proper range for a Range I offender, and that the record supported the findings regarding the enhancement factors, and that the court did not abuse its discretion in sentencing the Petitioner. Id. at *28. Finally, this court concluded that no cumulative error existed. Id.

## POST-CONVICTION HEARING

The Petitioner filed a pro se petition for post-conviction relief on December 1, 2017. He argued that he received ineffective assistance of counsel and that prosecutorial misconduct occurred. Following the appointment of counsel, an amended petition was filed on October 2, 2019, adding allegations that trial counsel failed to preserve the Petitioner's right to a preliminary hearing and failed to effectively cross-examine witnesses. A second amended petition was filed on the same day, alleging that trial counsel failed to request a continuance based on the superseding indictment, failed to object to the admission of the Petitioner's unsigned police statement, erroneously advised the Petitioner that he would be sentenced as a mitigated offender, and that the trial court erred in considering pending cases during sentencing.

At the post-conviction hearing, the Petitioner testified that his original defense counsel represented him from his arrest in 2011 until trial counsel's death. He testified that original trial counsel did not have a preliminary hearing. Following his death, the Petitioner was appointed new trial counsel. New trial counsel met with the Petitioner, reviewed the discovery material, and had at least one jail visit with the Petitioner. The Petitioner could not recall discussing possible defenses with trial counsel.

-7-

The Petitioner recalled a police statement that he claimed he did not make and was unsigned. Original defense counsel argued the motion to suppress regarding the statement. The Petitioner did not recall discussing the statement with new trial counsel, and he averred that he was unaware the statement would be used at trial. The Petitioner agreed that the unsigned statement characterized the sexual relations between the Petitioner and the victim as consensual.

The Petitioner testified that he was unaware of the superseding indictment on the day of trial, but that trial counsel stated that "[the prosecution] just fixed the indictment." The Petitioner was in custody on the day of trial and did not want a continuance "if [the prosecution] was going to add some more charges." Despite not wanting a continuance, the Petitioner testified that he did not have an opportunity to prepare additional theories of defense regarding the superseding indictment.

The Petitioner's case was originally set for trial in 2012, and the trial date was reset "six or seven times." The Petitioner testified that he did not ask for the continuances, but "the victim and the witnesses" did not show up to the previous settings. He testified that trial counsel informed him that he could not receive a sentence more than "seven point two" years and that prior to this incident, he only had a juvenile record.

On cross-examination, the Petitioner did not recall a hearing about additional charges prior to trial, but did recall speaking with trial counsel about whether to proceed to trial. He also recalled discussing potential sentences with trial counsel after his convictions, but prior to his sentencing hearing. The Petitioner testified that he met with trial counsel in the courtroom multiple times. The Petitioner also testified to having prior juvenile convictions for driving on a suspended license, evading arrest, theft of property valued at more than $500, and reckless endangerment. The Petitioner also agreed that he had two pending felony charges of aggravated assault and aggravated burglary at the time of trial.

Trial counsel testified that she was licensed in 2012 and had worked at the Public Defender's Office since 2012. In 2015, she began handing felony cases. She recalled being assigned the Petitioner's case following the death of original defense counsel. At the time of the Petitioner's trial, she had been first chair in two felony jury trials. She was assisted by another Public Defender who had twenty years of experience and had been in involved in "close to two hundred" felony trials.

At the time trial counsel was appointed, the Petitioner's case had been pending for "at least a couple of years" and a preliminary hearing had already been held. The trial date was set, and a motion to suppress the police statement had already been heard at the time

of her appointment. Trial counsel did not believe a motion to reconsider the motion to suppress would have been proper. Trial counsel recalled reviewing all discovery materials with the Petitioner, meeting at her office multiple times, and meeting in jail multiple times after the Petitioner was rearrested.

Trial counsel recalled a plea offer of three years' probation for attempted rape. Trial counsel and assisting counsel met with the Petitioner "at least once, and maybe a couple of times" to discuss the offer. The Petitioner would not accept the offer and decided to proceed to trial.

Following the superseding indictment, trial counsel had a discussion with the Petitioner about asking for a continuance. Based upon trial preparations with consent as the defense theory, trial counsel did not ask for a continuance, nor did she renew her motion for a preliminary hearing. Trial counsel and the Petitioner decided to proceed to trial. Trial counsel was not surprised by the superseding indictment based on the discovery materials. Trial counsel made the strategic decision to "own the statement" that the Petitioner and the victim had consensual sex. At trial, she recalled cross-examining the victim about any and all issues that were admissible at trial. Trial counsel testified that despite no witnesses to the incident, individuals were able corroborate the victim's story at trial.

Trial counsel recalled having discussions with the Petitioner about his possible sentencing range after he was convicted, and she advised the Petitioner that he would be sentenced as a range one offender and could be sentenced from eight to twelve years. Trial counsel was aware of the Petitioner's prior convictions, but was also aware that those would not have been used to determine his sentencing range. Trial counsel called a few of the Petitioner's family members to testify at his sentencing hearing and argued for a mitigated offender range.

The post-conviction court denied the petition in a written order on May 11, 2020. The post-conviction court credited trial counsel's testimony that she was preparing for trial with a theory of consent when she was informed of the superseding indictment and that she did not think about renewing the motion for a new preliminary hearing on the morning of trial. The post-conviction court found trial counsel's decision reasonable because the new charges did not change the defensive strategy at trial.

The post-conviction court did not find trial counsel ineffective for "embracing" the unsigned police statement. The Petitioner admitted that he did not sign the statement when he found out he was going to be charged with rape. Trial counsel and the Petitioner both testified that trial counsel discussed trial strategy and that the statement was used in the defense theory of consent.

The post-conviction court credited trial counsel's testimony that she was aware of the Petitioner's prior class E felony convictions, was assisted by a "seasoned" attorney, and would not have advised him that he would be sentenced as a mitigated offender. Additionally, the post-conviction court found that even if the Petitioner had been advised that he would be sentenced as a mitigated offender, he failed to show that he was prejudiced by this advice.

The post-conviction court concluded that trial counsel was not ineffective for failing to move for a continuance after the superseding indictment was filed. The superseding indictment did not include any additional charges that would have added facts or an offense that was not reasonably foreseeable. Trial counsel testified that nothing in the superseding indictment was unexpected and that it did not change her trial defense strategy. The post-conviction court found that trial counsel was prepared for trial and that the Petitioner was not prejudiced by trial counsel's decision not to request a continuance.

Finally, the post-conviction court found that the issue related to the trial court's considering pending cases as evidence of ongoing criminal conduct for enhanced sentencing was previously determined on appeal and that the Petitioner was not entitled to relief.

The Petitioner timely filed a notice of appeal. The case is now before us for review.

**ANALYSIS**

On appeal, the Petitioner argues that trial counsel was ineffective because she failed to explain the elements of the additional offenses charged in the superseding indictment. The State argues that counsel was not ineffective.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal Petitioners are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I,

section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

We agree with the post-conviction court that counsel was not deficient in her representation of the Petitioner. Trial counsel testified that following the superseding indictment, she and the Petitioner discussed how the two new charges were foreseeable and that the defense of consent would remain the same for the two new rape charges. The record supports the post-conviction court's finding that trial counsel had met with the Petitioner, was prepared for trial, and made a reasonable decision regarding trial strategy with the Petitioner's help.

Additionally, the Petitioner's statement in his brief that "[h]ad trial counsel properly explained the elements of the new offenses in the superseding indictment, it is unlikely [he] would have elected to proceed to trial" is belied by his testimony at trial that after the superseding indictment was filed, he did not want a continuance. The Petitioner offers no argument or evidence of how the outcome would have changed had the two additional rape charges been more thoroughly explained to him, and we do not discern any. The Petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE